UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PRIMERICA FINANCIAL SERVICES, INC.,

Petitioner,

- against -

RICHARD REID and CRYSTAL CUEVAS,

Respondents.

Docket No.:
14-cv-7795 (ALC)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS THE PETITION AND IN OPPOSITION TO THE PETITION

VIRGINIA & AMBINDER, LLP
111 Broadway, 14th Floor
New York, New York 1004
(212) 943-9080

-and-

LEEDS BROWN LAW, P.C.
One Old Country Road, Suite 347
Carle Place, New York 11514
(516) 873-9550
*Attorneys for Respondents*

JAMES EMMET MURPHY
Of Counsel

## TABLE OF CONTENTS

**PAGE**

Table of Authorities ............................................................................................................ ii

I.  POINT I: THIS COURT LACKS SUCJECT MATTER JURISDICTION OVER THIS
    ACTION ........................................................................................................... 3

    A.  The Parties Are Not Diverse ........................................................................ 5

    B.  The Amount In Controversy Is Less Than $75,000.00 ................................. 9

II.  POINT II:  THE ALLEGED ARBITRATION AGREEMENTS DO NOT APPLY TO
     THE CLAIMS AT ISSUE .............................................................................. 14

III.  CONCLUSION ............................................................................................... 25

## TABLE OF AUTHORITIES

**PAGE**

**Supreme Court Cases**

*Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) ............................................................1

*Hunt v. Washington State Apple Advertising Commission*, 432 US. 333 (1977) ...........9

*Granite Rock CO. v. Int'l Bhd. Of Teamsters*, 561 US. 287 (2010) ............................18

*Navarro Savings Assn. v. Lee*, 446 U.S. 458 (1938)........................................................7

*Vaden v. Discovery Bank*, 556 U.S. 49 (2009) ........................................................4,5,6

*Volt Info Scis., Inc. v. Board of Treasurers of Leland Stanford Jr. University*,
    489 U.S. 468 (1989)...............................................................................................24


**Lower Court Cases**

*Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*,
    645 F.3d 522 (2nd Cir. 2011)..............................................................................18

*Bank Julius Baer & Co. v. Waxfield Ltd.*,
    424 F.3d 278 (2d Cir. 2005)...............................................................................18

*Cohen v. Office Depot, Inc.*,
    204 F.3d 1069 (11th Cir. 2000) ...........................................................................9

*Cohen v. UBS Fin. Servs. Inc.*,
    2012 U.S.Dist.LEXIS 174700 (S.D.N.Y. Dec. 4, 2012) (Jones, D.J.) ...................23

*Correspondent Services Corporation v. JVW Investment, Ltd.*,
    2004 U.S.Dist.LEXIS 19341 (S.D.N.Y. Sep. 30, 2004) (Sweet, D.J.)................3, 10

*Dana Corp. v. Colfax Corp.*,
    2004 U.S.Dist.LEXIS 3973 (S.D.N.Y. Mar. 12, 2004) (Chin, D.J.) ........................3

*Doctor's Associates, Inc. v. Distajo*,
    66 F.3d 438 (2nd Cir. 1995)..................................................................................8

*Doctor's Associates, Inc. v. Osuji*,
    14 Fed.Appx. 1, 2001 U.S.App.LEXIS 15751 (2nd Cir. 2001)...............................8

*E.R. Squibb & Sons, Inc. v. Accident & Casualty Insurance Co.*,

160 F.3d 925 (2nd Cir. 1998)................................................................9

*Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Elecs., Inc.*,
    120 F.3d 216 (11th Cir. 1997) ..........................................................10

*GFI Brokers LLC v. Bellard.*,
    2013 N.Y.Misc.LEXIS 3153 (Sup.Ct.N.Y.Co. July 16, 2013)(Kornreich, J.))..................23,24

*Goldman, Sachs & Co. v. Golden Empire Schools Financing Authority*,
    764 F.3d 210 (2nd Cir. 2014)........................................5,9,18,19,20,23

*Gomez v. Brill Sec.*,
    2010 U.S. Dist. LEXIS 118162 (S.D.N.Y. Nov. 2, 2010).......................................21

*Kheel v. Port of New York Authority*, 457 F.2d 46 (2nd Cir. 1972) ............................................10

*Lloyd v. J.P. Morgan Chase & Co.*,
    2013 U.S.Dist.LEXIS 129102 (S.D.N.Y. Sep. 9, 2013) (Swain, D.J)...........................21,22,23

*Mitchell v. Geico*, 115 F.Supp.2d 1322 (M.D.Alabama 2000)...........................................10,12,13

*Oscar Gruss & Son, Inc. v. Hollanderi*, 337 F.3d 186 (2nd Cir. 2003).....…….................……...6,8

*Pers. Sec. & Safety Sys. v. Motorola*,
    297 F.3d 388 (5th Cir. 2002) ..........................................................18

*Schnabel v. Trilegiant Corp.*,
    697 F.3d 110 (2nd Cir. 2012)..........................................................24

*Statek Corp v. Dev. Specialists, Inc.*, 673 F.3d 180 (2nd Cir. 2013) ...........................................1

*U.S. Bank National Association v. Nesbitt Bellevue Property LLC*,
    859 F.Supp.2d 602 (S.D.N.Y. May 7, 2012) (Koeltl, D.J.)................................6,7,8

*Zeltser v. Merrill Lynch & Co., Inc.*,
    2013 U.S.Dist.LEXIS 129743 (S.D.N.Y. Sep. 11, 2013) (Baer, D.J.) ..............................20,21

## **Statutes**

9 U.S.C. § 4...................................................................................3

28 U.S.C. § 1332 ...........................................................................3,4,6,7,8

28 U.S.C. § 1651(a) ......................................................................3

28 U.S.C. § 2283 ...........................................................................................................4

29 U.S.C. § 206 .......................................................................................................11,12

Federal Rules of Civil Procedure 12(b)(1) ................................................................25

Federal Rules of Civil Procedure 12(h)(3) .................................................................3

Federal Rules of Civil Procedure 17(a)(1) .................................................................3

New York Labor Law § 652(1) ..............................................................................11,12

N.Y. Codes Rules and Regulations Title 12 § 142-2.2 ........................................11,12

**Other Authorities**

United States Constitution Art III § 2 ........................................................................6

Financial Industry Regulatory Authority Rule 13100(o)...........................................15

Financial Industry Regulatory Authority Rule 13204(a) ...........................14,15,19,21,22

Financial Industry Regulatory Authority Rule 13204(b)...........................................21

77 Fed. Reg. 1773-01, 1774, "Proposed Rule Change To Amend the Code of Arbitration
    Procedure for Industry Disputes To Preclude Collective Action Claims From Being
    Arbitrated".............................................................................................................21

This Court is required to disfavor attempts by litigants to forum-shop between State and Federal Courts in the same physical location. *See* <u>Statek Corp v. Dev. Specialists, Inc.</u>, 673 F.3d 180, 188-189 (2nd Cir. 2013) ("the [<u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64 (1938)] Court's decision to eliminate general federal common law was in part justified by intra-state forum shopping concerns"). Here, two individuals – named Respondents Richard Reid (a citizen of the State of New York) and Crystal Cuevas (the "Reid Plaintiffs" or "Respondents") – properly filed an action (the "Reid Action") against their former employers, Primerica Financial Services Agency of New York, Inc., and PFS Investments, Inc., in the New York State Supreme Court, New York County.

Initially, Primerica Financial Services Agency of New York, Inc., and PFS Investments, Inc. attempted to have the Reid Action assigned to the Commercial Division of the New York County Supreme Court. *See* September 17, 2014 Order of the Hon. Justice Sherry Klein Heitler, annexed to the accompanying November 20, 2014 Declaration of James Emmet Murphy (the "Murphy Declaration") as Exhbit 1. When this attempt was unsuccessful, and the matter was assigned to the Individual Assignment Part of the New York County Supreme Court, Primerica Financial Services Agency of New York, Inc., and PFS Investments, Inc. improperly removed the Reid Action to the United States District Court for the Southern District of New York, and moved to compel arbitration and stay the action. Presumably aware that their removal of the Reid Action was improper, and that remand to the New York State Supreme Court was inevitable, Primerica Financial Services, Inc. ("Petitioner") – a non-party to the Reid Action – then commenced this proceeding against the <u>Reid</u> Plaintiffs, seeking to compel arbitration and enjoining litigation by naming the <u>Reid</u> Plaintiffs as Respondents here.

1

It is respectfully submitted that this Court patently has no jurisdiction over this proceeding, notwithstanding Primerica Financial Services, Inc.'s allegations in paragraphs 7-9 in their verified petition. Conspicuously absent from Primerica Financial Services, Inc.'s verified petition is Primerica Financial Services Agency of New York, Inc. – the Reid Plaintiffs' employer, and the primary Defendant in the Reid Action. The Reid Plaintiffs were never employed by Primerica Financial Services, Inc., which is named as a party in this action solely for the purposes of alleging diversity jurisdiction.

Further, Primerica Financial Services, Inc.'s verified petition alleges that it "has a reasonable, good-faith belief that the amount in controversy exceeds $75,000, exclusive of interest" (*see* Murphy Declaration Ex. 2, Verified Petition, at ¶ 7) despite the fact that the Complaint in the Reid Action *clearly* shows that there is no possibility that the amount allegedly owed to the Reid Plaintiffs exceeds $75,000.00. The record is clear that Primerica Financial Services, Inc. can have no reasonable, good-faith belief that the amount in controversy exceeds $75,000.00, and this proceeding is nothing but blatant attempt to convince the Court to grant Petitioners relief in a matter over which this Court has no jurisdiction. As such, this proceeding must be dismissed.

Further, in the unlikely event this Court determines that it does have subject matter over this proceeding, Petitioner's claims must fail on the merits. Petitioner seeks to compel arbitration of claims which clearly and unequivocally are not within the scope of the arbitration clauses at issue.

Accordingly, Respondents respectfully request that this Court dismiss this proceeding for lack of subject matter jurisdiction. In the alternative, this Court should wholly deny Petitioner's request to compel arbitration and enjoin the <u>Reid</u> litigation.

2

**POINT I:**

**THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS ACTION**

Pursuant to F.R.C.P. Rule 12(h)(3), "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." "Once subject matter jurisdiction is challenged, the burden of establishing jurisdiction rests with the party asserting that it exists… The party asserting subject matter jurisdiction must prove that the court has such jurisdiction by a preponderance of the evidence." Correspondent Services Corporation v. JVW Investment, Ltd., 2004 U.S.Dist.LEXIS 19341*15, Index No. 99-cv-8934 (S.D.N.Y. Sep. 30, 2004) (Sweet, D.J.). Petitioners cannot rely on the language of any purported agreements with the Reid Plaintiffs to establish subject matter jurisdiction: "the parties cannot stipulate to subject matter jurisdiction where it does not exist." Dana Corp. v. Colfax Corp., 2004 U.S.Dist.LEXIS 3973*14, Index No. 03-cv-7288 (S.D.N.Y. Mar. 12, 2004) (Chin, D.J.). In arguing that this Court has subject matter jurisdiction over this proceeding, Petitioner Primerica Financial Services, Inc. asserts diversity jurisdiction, 28 U.S.C. § 1332 claiming that jurisdiction exists because "complete diversity of citizenship exists between the parties and because, based on the allegations contained in the State Action, Primerica has a reasonable, good-faith belief that the amount in controversy exceeds $75,000, exclusive of interest." See Murphy Declaration Ex. 2, Verified Petition, at ¶ 7. Neither of these allegations are true.

Petitioner seeks to compel arbitration and enjoin further litigation of the Respondents' claims pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4; along with the All Writs Act, 28 U.S.C. § 1651; and the Anti-Injunction Act, 28 U.S.C. § 2283. See Murphy Declaration Ex. 2, Verified Petition, at p. 1. None of these statutes confer an independent basis for jurisdiction. See 28 U.S.C. § 1651(a) ("The Supreme Court and all courts established by Act of Congress may

3

issue all writs necessary or appropriate *in aid of their respective jurisdictions* and agreeable to the usages and principles of law") (emphasis added); 28 U.S.C. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or *where necessary in aid of its jurisdiction*, or to protect or effectuate its judgments") (emphasis added). The FAA quite clearly does not confer any independent basis for jurisdiction on its own: "As for jurisdiction over controversies touching arbitration, however, the [Federal Arbitration] Act is something of an anomaly in the realm of federal legislation: It bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute." <u>Vaden v. Discover Bank</u>, 556 U.S. 49, 59 (2009) (internal punctuation omitted).

In order for a party to properly invoke this Court's jurisdiction in a proceeding to compel arbitration under the FAA, "the district court should assume the absence of the arbitration agreement and determine whether it would have jurisdiction under title 28 without it." <u>Vaden</u>, *supra*, 556 U.S. at 62 (internal punctuation removed). Here, Petitioner has alleged the basis of this Court's jurisdiction to be diversity, under 28 U.S.C. § 1332. Petitioner has expressly not invoked the "minimal diversity" provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d); as such, the ordinary diversity requirements of 28 U.S.C. § 1332(a) apply. Pursuant to 28 U.S.C. § 1332(a), two requirements must be met: first, the amount in controversy must exceed $75,000.00; second, the action or proceeding must be between citizens of a state and citizens of a foreign state (the "diversity of citizenship" requirement). For purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." *See* 28 U.S.C. § 1332(c)(1).

Here, neither the "amount in controversy" nor the "diversity of citizenship" requirements are met. When determining subject matter jurisdiction for an action to compel arbitration under the FAA, the District Court must have jurisdiction over the "substantive conflict between the parties." Vaden, *supra*, 553 U.S. at 63. As the Second Circuit recently held, "In a suit to compel arbitration, we evaluate jurisdiction by 'looking through' . . . to the parties' underlying substantive controversy." Goldman, Sachs & Co. v. Golden Empire Schools Financing Authority, 764 F.3d 210, 213 (2nd Cir. 2014).

### A. The Parties Are Not Diverse

As no independent jurisdiction exists under the FAA, "we read *§ 4* to convey that a party seeking to compel arbitration may gain a federal court's assistance only if, 'save for' the agreement, the entire, actual 'controversy between the parties,' as they have framed it, could be litigated in federal court." Vaden, *supra*, 556 U.S. at 66. Here, the parties' "underlying substantive controversy" is set forth in the Reid Action Complaint commenced in New York County Supreme Court. *See* Reid Complaint, Murphy Declaration Exhibit 3. In Reid, the named Plaintiffs are Richard Reid, a resident of the State of New York, and Crystal Cuevas, a resident of the State of Colorado. *See* Reid Complaint, Murphy Declaration Exhibit 3, at ¶¶ 6, 7; and the named Defendants are Primerica Financial Services Agency of New York, Inc., a New York corporation (*see* Reid Complaint, Murphy Declaration Exhibit 3, at ¶ 8) and PFS Investment Inc., a Georgia Corporation (*see* Reid Complaint, Murphy Declaration Exhibit 3, at ¶ 9). As both Primerica Financial Services Agency of New York, Inc. and Richard Reid are citizens of the State of New York, the parties are not diverse, and no diversity jurisdiction exists.

The instant action is a case where "a *§ 4* petition is filed after litigation has commenced. The party seeking to compel arbitration in such cases is typically the defendant, who claims to be

aggrieved by the plaintiff's attempt to litigate rather than arbitrate." <u>Vaden</u>, *supra*, 556 U.S. at 63. Here, however, Petitioner Primerica Financial Services, Inc. is not a defendant in the existing state court litigation; rather, Petitioner is a stranger to the underlying litigation, claiming to be an "affiliate" of the Defendants in the <u>Reid</u> Action. *See* Murphy Declaration Ex. 2, Verified Petition, at ¶ 2.

Petitioner attempts to obtain diversity jurisdiction by omitting necessary parties named in the <u>Reid</u> Action and instead bringing this action as the sole party Petitioner. This attempt at a legal fiction to create diversity jurisdiction cannot stand. Pursuant to F.R.C.P. Rule 17(a)(1), "[a]n action must be prosecuted in the name of the real party in interest." Here, Primerica Financial Services Agency of New York, Inc. – Defendant in the <u>Reid</u> Action and thus the actual party in the "controversy between the parties" – is the "real party in interest." Yet Petitioner did not name Primerica Financial Services Agency of New York, Inc. in this proceeding, because Primerica Financial Services Agency of New York, Inc. is a New York citizen, and thus diversity jurisdiction would not exist if this "real party in interest" were a Petitioner here.

"Federal courts have diversity jurisdiction over controversies between 'citizens of different States.' *Oscar Gruss [ & Son, Inc. v. Hollander], 337 F.3d [186] at 193 [(2nd Cir. 2003)]* (citing *28 U.S.C. § 1332(a)(1)*). It is axiomatic that, '[i]f subject matter jurisdiction is lacking, the action must be dismissed.' Id. (citation and internal quotation marks omitted)." <u>U.S. Bank National Association v. Nesbitt Bellevue Property LLC</u>, 859 F.Supp.2d 602, 608 (S.D.N.Y. May 7, 2012) (Koeltl, D.J.). "Federal courts have diversity jurisdiction over controversies between 'citizens of different States.' *28 U.S.C. § 1332(a)(1)*; U.S. Const. art. III, § 2. It is firmly established that 'citizens' for purposes of a federal court's diversity jurisdiction must be real and substantial parties to the controversy." <u>Oscar Gruss</u>, *supra*, 337 F.3d at 193. In order for diversity jurisdiction to exist,

the "real parties in interest" must be diverse. "A party's citizenship is taken into account for diversity purposes when it is a real and substantial party to the controversy." <u>U.S. Bank National Association</u>, *supra*, at 608. "Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." <u>Navarro Savings Assn. v. Lee</u>, 446 U.S. 458, 461 (1980). In determining whether a District Court has diversity jurisdiction in a proceeding to stay an action and compel arbitration, the crucial question is whether "'save for' the agreement, the entire, actual 'controversy between the parties,' as they have framed it, could be litigated in federal court." <u>Vaden</u>, *supra*, 556 U.S. at 66.

The answer to this question is an emphatic "no" – as the parties to the <u>Reid</u> state court Action are simply not diverse, and "save for" the alleged arbitration agreements, the <u>Reid</u> Action could not be properly litigated in Federal Court under 28 U.S.C. § 1332(a)[1]. While Petitioner here, Primerica Financial Services, Inc., is a Georgia corporation, it is not a Defendant in the <u>Reid</u> Action and thus cannot benefit from the relief it seeks – specifically, an order compelling the <u>Reid</u> Plaintiffs to arbitrate their claims against the <u>Reid</u> Defendants, and enjoining the <u>Reid</u> litigation.

The <u>Reid</u> Plaintiffs have filed suit against Primerica Financial Services Agency of New York, Inc., and PFS Investments, Inc.; as such, in order to compel arbitration, the arbitration provisions upon which Petitioner relies must prohibit litigation between the <u>Reid</u> Plaintiffs and Primerica Financial Services Agency of New York, Inc., and PFS Investments, Inc.; that is the relief being sought in the Petition. The fact that Petitioner here, Primerica Financial Services, Inc., is a Georgia corporation is irrelevant for diversity purposes: "[a] district court should not consider the citizenship of strangers to the arbitration contract, since they are not 'parties' [to] the suit

---

[1] Again, as Petitioner has not alleged the Class Action Fairness Act as a potential basis for jurisdiction, no discussion need be made as to the applicability of 28 U.S.C. § 1332(d) to this proceeding. As set forth in the pending motion to remand the <u>Reid</u> Action, no CAFA jurisdiction exists, in any event.

arising out of the controversy within the meaning of the FAA." <u>Doctor's Associates, Inc. v. Osuji</u>, 14 Fed.Appx. 1, 2001 U.S.App.LEXIS 15751*2 (2nd Cir. 2001), *quoting* <u>Doctor's Associates Inc. v. Distajo</u>, 66 F.3d 438, 446 (2nd Cir. 1995). Petitioner is simply not the correct party to be seeking relief on behalf of Primerica Financial Services Agency of New York, Inc., and PFS Investments, Inc. for purposes of establishing diversity jurisdiction. Regardless of whether the <u>Reid</u> Plaintiffs may or may not have separately entered into arbitration agreements with Petitioner, it "must also establish that it is a 'real and substantial party to the controversy' for the purpose of determining diversity jurisdiction… a crucial distinction must be made between a plaintiff who sues solely in his capacity as an agent, on the one hand, and, on the other, a plaintiff who sues not only as an agent, but also as an individual who has his own stake in the litigation." <u>Oscar Gruss</u>, *supra*, 337 F.3d at 194. As no relief is being sought against Petitioner in the <u>Reid</u> Action, it has no "stake in the litigation" underlying the actual controversy between the parties.

Petitioner is acting only as an "affiliate" of the non-diverse Defendants in the <u>Reid</u> Action (*see* Verified Petition, Murphy Declaration Ex. 2, at ¶2), and is seeking relief on their behalf – effectively suing as an agent of Primerica Financial Services Agency of New York, Inc., and PFS Investments, Inc. It is black-letter law that "[a] plaintiff who sues solely in his capacity as an agent is not a real and substantial party for diversity purposes… In such a case, the citizenship of the represented individuals controls for diversity purposes, as they are the real and substantial parties to the dispute." <u>U.S. Bank National Association</u>, *supra*, at 608-609. As at least one Plaintiff in the <u>Reid</u> Action is a citizen of the same State as at least one Defendant, the real parties in interest in this proceeding are not diverse, and this Court has no subject matter jurisdiction under 28 U.S.C. § 1332.

**B.  The Amount In Controversy Is Less Than $75,000.00**

Petitioner also alleges that "Primerica has a reasonable, good-faith belief that the amount in controversy exceeds $75,000, exclusive of interest." *See* Verified Petition, Murphy Declaration Ex. 2, at ¶ 7. The threshold amount of $75,000.00 is a necessary condition for diversity jurisdiction to exist. *See* E.R. Squibb & Sons, Inc. v. Accident & Casualty Insurance Co., 160 F.3d 925, 933 (2nd Cir. 1998). This allegation is clearly incorrect from the face of the Complaint in the Reid Action.

As previously stated, "[i]n a suit to compel arbitration, we evaluate jurisdiction by 'looking through' . . . to the parties' underlying substantive controversy." Goldman, Sachs & Co. v. Golden Empire Schools Financing Authority, 764 F.3d 210, 213 (2nd Cir. 2014). Here, Petitioner seeks to compel arbitration of claims stated by Richard Reid and Crystal Cuevas in the Reid Action and enjoin litigation of that Action, which alleges underpayment of minimum wages and overtime payments. The "underlying substantive controversy" is the right of the Reid Plaintiffs to receive the minimum wage and overtime payments they allege that they were entitled to but did not receive, despite the fact that the Verified Petition seeks only injunctive and declaratory relief. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 347 (1977).

"Looking through" to the parties' underlying controversy (Goldman, Sachs & Co., *supra*, 764 F.3d at 213 (2nd Cir. 2014)), the "object of the litigation" which is sought to be enjoined here is the monetary value of the claims of Reid and Cuevas. "Where injunctive relief is sought, 'the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective.' *Cohen [v. Office Depot, Inc.], 204 F.3d [1069] at 1077 [{11th Cir. 2000)]* (citing

*Ericsson [GE Mobile Communications, Inc. v. Motorola Communications & Elecs., Inc.], 120 F.3d [216] at 218-20 [(11th Cir 1997)]*). 'In other words, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted.' <u>Id</u>. Where multiple plaintiffs claim less than the jurisdictional amount, their separate and distinct claims cannot be aggregated in order to satisfy the jurisdictional requirement of *§ 1332(a)*." <u>Mitchell v. Geico</u>, 115 F.Supp.2d 1322, 1326 (M.D.Alabama 2000) (DeMent, D.J.). "The amount in controversy is calculated from the plaintiff's standpoint; *the value of the suit's intended benefit* or *the value of the right being protected* or *the injury being averted* constitutes the amount in controversy when damages are not requested." <u>Correspondent Services Corporation v. JVW Investment, Ltd.</u>, 2004 U.S.Dist.LEXIS 19341*22-23, Index No. 99-cv-8934 (S.D.N.Y. Sep. 30, 2004) (Sweet, D.J.) (emphasis in original); *quoting* <u>Kheel v. Port of New York Authority</u>, 457 F.2d 46, 49 (2nd Cir. 1972).

The "value of the suit's intended benefit" to Petitioner Primerica Financial Services, Inc. is $0.00 – they are not a party to the underlying litigation in the <u>Reid</u> Action, and stand to lose nothing if the <u>Reid</u> Action goes forward. The value of the <u>Reid</u> Action's benefit to Reid and Cuevas can be easily calculated based on the allegations in the <u>Reid</u> Complaint. In the Complaint in the <u>Reid</u> Action, it is alleged that Plaintiffs Reid and Cuevas are owed unpaid minimum wages and overtime for work performed. No allegation for liquidated damages is made. Specifically, the <u>Reid</u> Complaint alleges that:

> Named Plaintiff Richard Reid worked for Defendants first as a trainee and cold caller and then as a financial product salesperson between approximately October 2012 and July 2013. Plaintiff Reid worked at Defendants' office located at 16 Pennsylvania Plaza, New York, New York, five days per week, and additionally worked some weekends. Plaintiff Reid primarily made telephone calls to individuals to sell financial services and products. Plaintiff Reid typically worked twelve to thirteen hours per day, Monday through Friday, with some additional

work on weekends. Plaintiff Reid received total compensation of approximately
$6,000 while working for Primerica.

See Reid Complaint, Murphy Declaration Ex. 3, at ¶ 21.

It is further alleged that:

Named Plaintiff Crystal Cuevas worked for Defendants as a trainee and cold caller
between approximately January 2011 and April 2011. Plaintiff Cuevas worked at
Defendants' office located at 16 Pennsylvania Plaza, New York, New York, and
later at Defendants' Brooklyn offices, five days per week. Plaintiff Cuevas
primarily made telephone calls to individuals to sell financial services and products.
Plaintiff Cuevas typically worked seven to eight hours per day, Monday through
Friday, and occasionally worked longer. Plaintiff Cuevas received total
compensation of approximately $1,000 while working for Primerica.

See Reid Complaint, Murphy Declaration Ex. 2, at ¶ 26.

Thus, it is specifically alleged that Reid worked, at a maximum, 65 hours per week Monday

through Friday, with "some" additional weekend work. Even assuming that "some" additional

weekend work constituted ten hours per week, Reid alleges to have worked a maximum of 75

hours per week. During the period between October 2012 and July 2013, the applicable minimum

wage in New York was $7.25 per hour. See New York Labor Law § 652(1) (establishing a

minimum wage of $7.15 per hour during the period in question, "or, if greater, such other wage as

may be established by federal law pursuant to 29 U.S.C. section 206 or its successors"); 29 U.S.C.

§ 206(a)(1)(c) (establishing a minimum wage of $7.25 per hour after July 24, 2009). At the

applicable minimum wage rate, Reid would be entitled to be paid each week for 40 hours at $7.25

per hour; and for 35 hours at $10.88 per hour (see 12 N.Y.C.R.R. § 142-2.2), for a total of $670.63

per week. Even assuming that Reid worked 75 hours per week, every week, during the entire period

between October 1, 2012 and July 31, 2013 – a period of 303 days, or 43.29 weeks – Reid's

allegations of wage underpayments would be 43.29 x $670.63, or $29,031.57, less any offsets for

money actually paid.

Cuevas alleges to have worked 35 to 40 hours per week, "and occasionally worked longer."

Even if it is assumed that "occasionally worked longer" equates to an extra ten hours per week,

11

Cuevas alleges to have worked a maximum of fifty hours per week. During the period between January 2011 and April 2011, the applicable minimum wage rate was $7.25 per hour. *See* New York Labor Law § 652(1); 29 U.S.C. § 206. At the applicable minimum wage rate, Cuevas would be entitled to be paid each week for 40 hours at $7.25 per hour, and for 10 hours at $10.88 per hour (*see* 12 N.Y.C.R.R. § 142-2.2), for a total of $398.75 per week. Even assuming that Cuevas worked 50 hours per week, every week, during the entire period between January 1, 2011 and April 30, 2011 – a period of 119 days, or 17 weeks – Cuevas' allegations of wage underpayments would be 17 x $398.75, or $6,778.75, less any offsets for money actually paid.

Accordingly, giving Petitioner every benefit of the doubt by assuming that both Reid and Cuevas never took any days off for vacation, sick, personal reasons, national holidays, or religious holidays, and instead worked the full amount of hours alleged in their Complaint *every single week* that they were employed by Primerica Financial Services Agency of New York, Inc., and PFS Investments, Inc., and even aggregating the amounts of alleged underpayments to both Reid and Cuevas – which cannot be done for purposes of establishing the amount-in-controversy requirement for diversity jurisdiction (*see* Mitchell, *supra*, 115 F.Supp.2d at 1326, (M.D.Alabama 2000) (DeMent, D.J.) – the maximum potential "amount in controversy" in the claims for which Petitioner seeks to compel arbitration is $6,778.75 due Cuevas plus $29,031.57 due Reid, for a total of $35,820.32 – far less than the $75,000.00 amount in controversy required for diversity jurisdiction to be invoked.

The dates provided by Petitioners for the length of employment of Reid and Cuevas do not align with those contained in the Reid Complaint; nonetheless, they do not meet the jurisdictional threshold. Petitioners claim that Reid was an agent between May 25, 2011 and November 1, 2012; and that Cuevas was an agent between February 15, 2012 and March 23, 2013. *See* Petitioners'

Memorandum, p. 3. While the time periods Reid and Cuevas claim to have worked for Primerica Financial Services Agency of New York, Inc., and PFS Investments, Inc. is far shorter, even these longer time periods claimed to have been worked by the <u>Reid</u> Plaintiffs do not create damages sufficient to meet the amount-in-controversy threshold. Under Petitioners' calculation, Reid's employment lasted for 526 days, or 75.14 weeks. Using the same calculations as above, this would equate to damages of $670.63 x 75.14, or $50,392.68, less credits for amounts paid. Under Petitioners' calculation, Cuevas' employment lasted for 402 days, or 57.43 weeks. Using the same calculations as above, this would equate to damages of $398.75 x 57.43, or $22,899.64, less credits for amounts paid. While these combined damages still do not rise to a level sufficient to meet the jurisdictional threshold of $75,000.00, "Where multiple plaintiffs claim less than the jurisdictional amount, their separate and distinct claims cannot be aggregated in order to satisfy the jurisdictional requirement of *§ 1332(a)*." <u>Mitchell</u>, *supra*, 115 F.Supp.2d at 1326, (M.D.Alabama 2000) (DeMent, D.J.).

Petitioner has not brought this proceeding against all current and former employees who make up the putative class in the <u>Reid</u> Action; Petitioner has not alleged the Class Action Fairness Act as a basis of jurisdiction; Petitioner seeks relief solely against Richard Reid and Crystal Cuevas. As the potential damages collectively alleged in the <u>Reid</u> Action by Reid and Cuevas constitute less than half of the jurisdictional minimum for this Court to invoke diversity jurisdiction, and as Petitioner Primerica Financial Services, Inc. is not a party to the <u>Reid</u> Action and seeks to gain or lose nothing whatsoever by being granted the relief it seeks in this proceeding, the $75,000.00 jurisdictional threshold for diversity jurisdiction to be invoked has not been met, and this proceeding must be dismissed for lack of subject matter jurisdiction.

**POINT II:**

## THE ALLEGED ARBITRATION AGREEMENTS DO NOT APPLY TO THE CLAIMS AT ISSUE

In the event that this Court holds that it has subject matter jurisdiction over this proceeding, the relief that Petitioner seeks – to compel arbitration of Reid and Cuevas' claims, and to enjoin prosecution of the Reid Action – must nevertheless be denied.

The Reid action is styled as a putative class action under Article 9 of the New York Civil Practice Law and Rules. At the heart of the parties' procedural dispute over the arbitrability of the claims in the Reid Action is the Financial Industry Regulatory Authority ("FINRA")'s Rule 13204(a). Pursuant to that Rule[2]:

**(a) Class Actions**
(1) Class action claims may not be arbitrated under the Code.

(2) Any claim that is based upon the same facts and law, and involves the same defendants as in a court-certified class action or a putative class action, or that is ordered by a court for class-wide arbitration at a forum not sponsored by a self-regulatory organization, shall not be arbitrated under the Code, unless the party bringing the claim files with FINRA one of the following:

(A) a copy of a notice filed with the court in which the class action is pending that the party will not participate in the class action or in any recovery that may result from the class action, or has withdrawn from the class according to any conditions set by the court; or

(B) a notice that the party will not participate in the class action or in any recovery that may result from the class action.

(3) The Director will refer to a panel any dispute as to whether a claim is part of a class action, unless a party asks the court hearing the class action to resolve the dispute within 10 days of receiving notice that the Director has decided to refer the dispute to a panel.

(4) A member or associated person may not enforce any arbitration agreement against a member of a certified or putative class action with respect to any claim that is the subject of the certified or putative class action until:

• The class certification is denied;

• The class is decertified;

---

[2] Available at: http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=4207

• The member of the certified or putative class is excluded from the class by the court; or

• The member of the certified or putative class elects not to participate in the class or withdraws from the class according to conditions set by the court, if any.

There is no dispute here that PFS Investments, Inc., a Defendant in the Reid Action, is a broker-dealer subject to regulation under the rules of FINRA, constituting a "member" for purposes of FINRA regulations. *See* FINRA Rule 13100(o)[3]: "For purposes of the Code, the term "member" means any broker or dealer admitted to membership in FINRA, whether or not the membership has been terminated or cancelled; and any broker or dealer admitted to membership in a self-regulatory organization that, with FINRA consent, has required its members to arbitrate pursuant to the Code and/or to be treated as members of FINRA for purposes of the Code, whether or not the membership has been terminated or cancelled."

There is also no dispute that the Reid Action constitutes a putative class action. FINRA Rule 13204(a)(4) specifically requires that a "member or associated person may not enforce any arbitration agreement against a member of a certified or putative class action with respect to any claim that is the subject of the certified or putative class action," until one of four specific events occurs – none of which have occurred here. As such, despite Petitioners' contentions, the claims in the Reid Action are simply not subject to arbitration.

The arbitration provisions upon which Petitioner relies for the relief it seeks are contained as Exhibits to the September 24th, 2014 Declaration of Robert H. Peterman, Jr. (the "Peterman Declaration"), submitted with Petitioner's moving papers. Petitioners allege that separate agreements entered into by the Reid Plaintiffs require that FINRA's rules be ignored, and that the

---

[3] Available at: http://finra.complinet.com/en/display/display.html?rbid=2403&element_id=4196

Reid Plaintiffs' claims be submitted to arbitration. Contrary to Petitioners' allegations, these agreements quite specifically do not require arbitration of these claims.

According to Petitioners, Reid "signed a paper [Independent Business Application ("IBA")] on May 20, 2011." *See* Peterman Declaration, ¶ 8. Thereafter, Reid executed a "Registered Representative Agreement" ("RRA") on April 21, 2012. *See* Peterman Declaration, ¶ 13. It is these documents upon which Petitioner relies in arguing that arbitration of the <u>Reid</u> Plaintiffs' claims must be compelled. Contrary to Petitioners' arguments, these documents specifically preclude arbitration of the claims asserted by the <u>Reid</u> Plaintiffs.

The principal provision at issue in the IBA is Paragraph 15 of the "Primerica Financial Services Basic Agreement" *See* "Primerica Financial Services Basic Agreement," Murphy Declaration Ex. 4, at p.2. As relevant here, the provision reads:

> 15. (a) Except as otherwise provided in this Agreement or another written agreement between you and a Primerica Company affiliate… will be settled solely through good faith negotiation… or, if that fails, binding arbitration. "Dispute" means any type of dispute in any way related to your relationship with a Primerica Company that under law may be submitted by agreement to binding arbitration, including allegations of breach of contract, personal or business injury or property damage, fraud and violation of federal, state or local statutes, Rules or regulations. A Primerica Company may exercise rights under this Agreement without first being required to enter into good faith negotiations or initiate arbitration.
> (b) The arbitration will be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). If you do not want to use AAA, then you may select Judicial Arbitration and Mediation Services, Inc. ("JAMS"), or, if mutually agreed, another arbitration administrator…

In accordance with Section 15(a), Reid thereafter entered into "another written agreement" with a Primerica Company affiliate. On or about April 21, 2012, (*see* Peterman Declaration, ¶ 13), Reid entered into a further, separate agreement with PFS Investments, Inc., the RRA (*see* Murphy Declaration, Ex. 5). The principal provision at issue in the RRA states as follows:

> 4. Any dispute, claim or controversy between you and FPS Investments or its affiliates arising under or in connection with the Agreement or your securities business through PFS Investments, including any claim of discrimination or sexual

harassment against PFSI or any of its affiliates, shall be settled by arbitration in accordance with FINRA rules. This provision is in addition to, and not limitation of, your agreement to arbitrate in your Form U4 Acknowledgment and Consent. Section 15 of your Basic Agreement will cover all other disputes, claims or controversies between you and any Primerica Company or representative including those over which FINRA does not exercise jurisdiction.

The RRA, at page 2, further contains specific reference to the FINRA arbitration provision included in FINRA's "Uniform Application for Securities Industry Registration or Transfer," commonly known as a "U4" form:

**ARBITRATION DISCLOSURE STATEMENT**: The form U4 Acknowledgement and Consent (below) contains a pre-dispute arbitration clause in item 5. Before signing the Form U4 Acknowledgement and Consent, you should understand the following:
1. You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and your firm, or a customer, or any other person, that is required to be arbitrated under the rules of self-regulatory organizations with which you are registering. This means you are giving up the right to sue a member, customer or another associated person in a court including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.
2. A claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute is not required to be arbitrated under FINRA rules. Such a claim may be arbitrated at FINRA only if the parties have agreed to arbitrate it, either before or after the dispute arose. The rules of the other arbitration forums may be different.

Thereafter, on June 4, 2012, Reid submitted a U4 form, creating a relationship between himself and PFS Investments, Inc. subject to the regulation of FINRA and FINRA's rules. *See* Murphy Declaration, Ex. 6. The U4 form, at p. 12, section 15A(5), contains the following provision:

5.  I agree to arbitrate any dispute, claim or controversy that may arise between me and my *firm*, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the *SROs* indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent *jurisdiction.*

Thus, the U4 form was the last agreement referencing arbitration entered into by Reid; it was preceded by the RRA, which was itself preceded by the IBA. Reid alleges that, because the

17

U4 form and FINRA's rules prohibiting the arbitration of class claims or the enforcement of arbitration provisions against parties subject to FINRA's regulation supersedes the arbitration provision in the IBA, the IBA's arbitration provisions do not require compulsion of arbitration of the claims at issue. As the Second Circuit has recently held, when assessing the enforceability of arbitration agreements in light of subsequent agreements, District Courts must look not only to the initial arbitration agreement, but rather to the terms of the later agreements entered into between the parties, and the "presumption of arbitrability" no longer holds. In <u>Goldman, Sachs & Co. v. Golden Empire Schools Financing Authority</u>, 764 F.3d 210, 215 (2nd Cir. 2014), the Second Circuit held:

> The FAA embodies a "federal policy favoring arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 302, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010).* Courts thus apply a "presumption of arbitrability," but only if an "enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand." *Id. at 301.* "In other words, while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Applied Energetics, Inc. v. NewOak Capital Mkts., LLC, 645 F.3d 522, 526 (2d Cir. 2011).* Because the question presented here concerns whether an arbitration agreement remains in force in light of a later-executed agreement, the presumption does not apply. In this Circuit, an agreement to arbitrate is superseded by a later-executed agreement containing a forum selection clause if the clause "specifically precludes" arbitration, *Bank Julius Baer & Co. v. Waxfield Ltd., 424 F.3d 278, 284 (2d Cir. 2005)* (quoting *Pers. Sec. & Safety Sys. v. Motorola, 297 F.3d 388, 396 n. 11 (5th Cir. 2002)*), but there is no requirement that the forum selection clause mention arbitration, *see Applied Energetics, 645 F.3d at 525.*

Here, Reid entered into a contract, the IBA, which included an arbitration provision requiring arbitration of claims. However, he *later* entered into an agreement with PFS Investments, Inc. which stated the following:

> Any dispute, claim or controversy between you and PFS Investments or its affiliates arising under or in connection with the Agreement or your securities business through PFS Investments, including any claim of discrimination or sexual harassment against PFSI or any of its affiliates, shall be settled by arbitration in accordance with FINRA rules.

*See* RRA, Murphy Declaration Ex. 5, at ¶ 4. Thus, the arbitration provisions of the IBA constitute "an agreement to arbitrate [that] is superseded by a later-executed agreement containing a forum selection clause [since] the clause 'specifically precludes' arbitration." Goldman, Sachs & Co., *supra*, 764 F.3d at 215. In the RRA, Reid and PFS Investments, Inc. agreed that claims such as these would be "settled by arbitration in accordance with FINRA rules," and FINRA rules *specifically* preclude the enforcement of arbitration in putative class actions such as the Reid Action. *See* FINRA Rule 13204(a)(4), *supra*. Thus, the parties made a specific and intentional agreement that any arbitration between them would be conducted in accordance with rules which preclude arbitration of these claims. Under the Second Circuit's clear directive in Goldman, Sachs & Co., arbitration simply cannot be compelled in the Reid Action.

The remaining provisions of the RRA do not save Petitioners' contention that these claims must be arbitrated. The RRA, at ¶ 4 (*see* Murphy Declaration, Ex. 5), further states: "This provision is in addition to, and not limitation of, your agreement to arbitrate in your Form U4 Acknowledgment and Consent. Section 15 of your Basic Agreement will cover all other disputes, claims or controversies between you and any Primerica Company or representative including those over which FINRA does not exercise jurisdiction." The fact that this provision is "in addition to, and not limitation of," the arbitration provisions of the U4 form is immaterial; the U4 form specifically states that Reid "agree[s] to arbitrate any dispute, claim or controversy that may arise between me and my *firm*, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the *SROs* indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time"[4] (*see* Murphy Declaration, Ex. 6, at p. 12, § 15A(5)), and FINRA rules prohibit the enforcement of arbitration provisions in putative class actions.

---

[4] "SRO," or "self-regulatory organization," here refers to FINRA.

While the RRA states that "Section 15 of your Basic Agreement will cover all other disputes, claims or controversies between you and any Primerica Company or representative including those over which FINRA does not exercise jurisdiction," this does not save Petitioners' allegations. FINRA expressly *does* exercise jurisdiction over the type of claims alleged here; FINRA Rule 13204(a)(4) specifically requires that a "member or associated person may not enforce any arbitration agreement against a member of a certified or putative class action with respect to any claim that is the subject of the certified or putative class action." FINRA has expressly claimed jurisdiction over claims such as these, and has expressly forbidden the enforcement of arbitration agreements for these claims. As such, the allegations in the <u>Reid</u> Action constitute a controversy over which the parties, in the RRA, expressly agreed to arbitrate their claims in accordance with FINRA's Rules, and expressly agreed to submit to FINRA's jurisdiction. FINRA exercises its jurisdiction over such claims by *expressly* prohibiting compulsion of arbitration for them; thus, in accordance with the plain terms of the parties' agreement in the RRA, the parties have expressly agreed *not* to arbitrate these claims, and the arbitration provisions of the IBA are superseded, in accordance with the Second Circuit's directive in <u>Goldman, Sachs & Co.</u> As such, the clear and unequivocal language of the parties' agreement precludes the relief that Petitioner here seeks.

This is not a novel concept in this Circuit. In <u>Zeltser v. Merrill Lynch & Co., Inc.</u>, 2013 U.S.Dist.LEXIS 129743, Index. No. 13-cv-1531 (S.D.N.Y. Sep. 11, 2013) (Baer, D.J.), the Court recognized that when parties agree to arbitrate their claims in accordance with FINRA's rules, compulsion of class claims cannot be allowed. As here, the <u>Zeltser</u> Plaintiffs executed a U4 form agreeing to arbitrate "any dispute, claim or controversy that may arise between me and my firm… that is required to be arbitrated under the rules, constitutions, or by-laws of [FINRA]." <u>Zeltser</u>,

20

*supra*, 2013 U.S.Dist.LEXIS 129743*3. The Court rejected an application to compel arbitration,

by following FINRA Rule 13204(a)(4), holding:

> The SEC's own interpretation of this rule is found in a letter of support for the view
> that arbitration cannot be compelled at this stage. *See* FINRA Interpretive Letter to
> Cliff Palefsky, Esq., Sept. 21, 2009; Swartz Decl. Ex. E. In the letter, which was
> issued prior to promulgation of Rule 13204(b), an agency representative stated that
> FLSA collective actions should be treated like class actions for the purposes of Rule
> 13204, and were ineligible for arbitration. The letter cites the SEC's 1992 finding
> that "parties should have access to the courts to resolve class actions efficiently."
> *Id.* Indeed, following an instance in which a court did not treat a FLSA collective
> action as a class action under Rule 13204, *see Gomez v. Brill Sec., No. 10 Civ. 3503,*
> *2010 U.S. Dist. LEXIS 118162, 2010 WL 4455827 (S.D.N.Y. Nov. 2, 2010)*, the SEC
> amended the FINRA rules to add §13204(b) to explicitly extend the treatment set
> out in Rule 13204(a) to FLSA collective actions. In its Notice prior to amending
> the rule, the [*7] SEC again affirmed the view that "FINRA believes that collective
> actions, like class actions, should be handled by the judiciary system, which has
> extensive procedures to manage such claims." *Proposed Rule Change To Amend*
> *the Code of Arbitration Procedure for Industry Disputes To Preclude Collective*
> *Action Claims From Being Arbitrated, 77 Fed. Reg. 1773-01, 1774* (proposed Jan.
> 11,2012)…
> The language of the statute, its legislative history, notice provisions and agency
> interpretation each reject Defendants' contention that arbitration should be
> compelled at this stage of the litigation… Neither the Supreme Court nor the
> Second Circuit has held that FINRA is preempted by the FAA in a fact pattern such
> as the one before me here. Without precedent to the contrary, this Court will follow
> the language of the statute, buttressed by its legislative history, notice provisions,
> and agency interpretation, all of which support Plaintiffs' view that arbitration
> should not be compelled.

The Zeltsner Court is not the only one to have held that, once parties expressly agree that

arbitration agreements between them are to be subject to the rules of FINRA, arbitration of class

claims cannot be compelled. In Lloyd v. J.P. Morgan Chase & Co., 2013 U.S.Dist.LEXIS 129102,

Index Nos. 11-cv-9305, 12-cv-2197 (S.D.N.Y. Sep. 9, 2013) (Swain, D.J.), the Court drew a

distinction between individuals who had signed arbitration agreements which included

incorporation of FINRA rules, and those who had signed arbitration agreements which did not

include incorporation of FINRA rules, in determining whether arbitration could be compelled.

Some Plaintiffs[5] had entered into an arbitration agreement which made no mention of FINRA (*see* Lloyd, *supra*, 2013 U.S.Dist.LEXIS 129102\*7-8). The Lloyd Court ordered that arbitration of these individuals' claims be compelled. (*see* Lloyd, *supra*, 2013 U.S.Dist.LEXIS 129102\*19-22). Other individual Plaintiffs had entered into arbitration agreements containing the following language:

> 12. Arbitration of Controversies
> Any claim or controversy concerning you arising out of or in connection with the business activities of JPMC, your activities and/or your appointment as a registered representative or your employment and/or the termination thereof required to be arbitrated by the FINRA Rules shall be resolved by individual (not class or collective) arbitration in accordance with the Code of Arbitration Procedure of the FINRA (including the FINRA Arbitration Disclosure Rule and Procedures for Employment Arbitration Disclosure Statement), and in accordance with applicable law . . . . [N]o claims shall be arbitrated on a class or collective action or collective or class-wide basis.

*See* Lloyd, *supra*, 2013 U.S.Dist.LEXIS 129102\*8-9. In Lloyd, as here, the parties had not only entered into the mandatory arbitration provisions contained in the U4 form, but had also entered into a separate agreement requiring arbitration of claims pursuant to FINRA rules. Rejecting J.P. Morgan Chase's attempt to compel arbitration of these individuals' putative class claims, the Lloyd Court held:

> FINRA Rule 13204(a), which was in effect at the time the four plaintiffs entered into their Agreements with Chase, provides that an arbitration agreement may not be enforced against a member of a certified or putative class action with respect to any claim that is the subject of the certified or putative class action until one of four conditions occurs: 1) the class certification is denied; 2) the class is decertified; 3) the member of the certified or putative class is excluded from the class by the court; or 4) the member of the certified or putative class elects not to participate in the class or withdraws from the class. FINRA Rule 13204(a)… The arbitration provision of Chase's Agreement with these four Plaintiffs clearly requires individual arbitration only to the extent such arbitration is "required . . . by the FINRA Rules." Because the FINRA Rules, as currently in effect, clearly do not require, and indeed preclude at this juncture, arbitration of the class and collective

---

[5] Specifically named by the Court as Johnson, Zaat-Hetelle, Vanhoogstraat, Piccoli, and Patey.

action claims raised in this litigation, Defendants' motion to compel arbitration of the claims of Plaintiffs Kaufman, Hyman, Krichman and Lammert must be denied. *See* Lloyd, *supra*, 2013 U.S.Dist.LEXIS 129102*23-24.

Here, the arbitration provisions of RRA, as the arbitration provisions of the agreement in Lloyd, specifically require that arbitration be conducted within FINRA's rules, and subject to FINRA's jurisdiction. FINRA has exercised its jurisdiction to prohibit compulsion of arbitration of class claims. As such, the specific agreement between the parties requires that arbitration of the claims in the Reid Action not be compelled.

Petitioners cite to Cohen v. UBS Fin. Servs., Inc., 2012 U.S.Dist.LEXIS 174700, Index. No. 12-cv-2147 (S.D.N.Y. Dec. 4, 2012) (Jones, D.J.) for the proposition that "FINRA's rules are contractual in nature and 'parties may contract beyond the default arbitration rules of the securities industry.'" *See* Petitioners' Memorandum, p. 10. However, unlike the arbitration provision in the RRA here, the arbitration provision at issue in Cohen *contained no reference to FINRA rules*. This stands in sharp contrast to the arbitration provision here in the RRA, which specifically states that FINRA rules govern the parties' arbitration process. In light of the Second Circuit's recent holding in Goldman, Sachs & Co. that subsequent agreements specifying terms of dispute resolution supersede earlier arbitration provisions, Petitioners' reliance on the blanket arbitration provisions of the IBA purportedly executed by Reid eleven months before he executed the more specific arbitration provision of the RRA – which, by its own terms, expressly precludes arbitration of class claims – cannot stand.

Likewise, Petitioners' reliance on GFI Brokers LLC v. Bellard, 2013 N.Y.Misc.LEXIS 3153, 2013 N.Y. Slip Op 31624(U), Index No 650388/2013 (Sup.Ct.N.Y.Co. July 16, 2013)(Kornreich, J.) serves them no better. In that case, addressing an individual claim in which FINRA Rule 13204(a) was not implicated, the Court merely noted that parties were entitled to

23

choose alternative judicial forums (there, the Southern District of New York) in the event FINRA refused to hear arbitration.  FINRA there agreed to hear the arbitration in the event the parties agreed to arbitrate their claims, which the Court held they had. Thus, GFI Brokers LLC, simply has no bearing on a circumstance, such as the one here, where the parties have expressly agreed that their arbitration should be subject to FINRA's rules, and FINRA's rules expressly preclude the compulsion of arbitration[6].

Simply put, to the extent the Court believes it has subject matter jurisdiction, it is respectfully submitted that it is nevertheless compelled to deny Petitioners' motion as the parties here have expressly agreed *not* to arbitrate claims such as those in the Reid Action. "[T]he FAA does not require parties to arbitrate when they have not agreed to do so." Volt Info Scis., Inc. v. Board of Treasurers of Leland Stanford Jr. University, 489 U.S. 468, 478 (1989); *see also* Schnabel v. Trilegiant Corp., 697 F.3d 110, 118 (2nd Cir. 2012) (same). Where the parties have entered into an express agreement that FINRA's rules shall govern their arbitration, and FINRA has clearly stated that it takes jurisdiction over those claims and, in exercise of its jurisdiction, bars the compulsion of arbitration, arbitration simply cannot be compelled. PFS Investments, Inc. executed an agreement on behalf of itself and its affiliates whereby it specifically agreed to subject arbitration of all claims to the jurisdiction of an entity which has decided that certain claims, such as those in the Reid Action, must be heard before a Court rather than an arbitrator. PFS specifically

---

[6] Parenthetically, Petitioners allege that "[t]he provision of the RRA upon which Reid will apparently rely, however, addresses only claims that arise 'in connection with' an agent's securities business,… and Reid sold no securities products." *See* Petitioners' Memorandum, p. 10. This is hardly material, as Reid alleges that he received only $6,000 for ten months of work with Primerica Financial Services Agency of New York, Inc., and PFS Investments, Inc. (*see* Reid Complaint, Murphy Declaration Ex. 3, at ¶ 21), because despite his diligent efforts, Reid barely sold *any* products during the course of his employment. Whether Reid was successful or not in his work selling financial products for Primerica Financial Services Agency of New York, Inc., and PFS Investments, Inc. is immaterial to his claims for compensation; employees do not lose their right to compensation for their work simply because they are unsuccessful at it.

24

agreed not to compel arbitration of these claims, and it cannot now be heard to complain that it must be held to the terms of its own agreements.

## **CONCLUSION**

Accordingly, Plaintiffs respectfully request that this Court: a) grant Plaintiffs' motion to dismiss the Verified Petition for lack of subject matter jurisdiction pursuant to F.R.C.P. Rule 12(b)(1); b) in the alternative, deny Petitioners' request for relief in its entirety; and c) grant such further relief as this Court deems necessary and appropriate.

Dated: November 20, 2014
     New York, New York

                    _____/s_____
                    James Emmet Murphy, Esq.
                    Lloyd R. Ambinder, Esq.
                    LaDonna M. Lusher, Esq

                    VIRGINIA & AMBINDER, LLP
                    111 Broadway, Suite 1403
                    New York, New York 10006
                    Tel:    (212) 943-9080
                    Fax:    (212) 943-9082

                    -and-

                    Jeffrey K Brown, Esq.
                    LEEDS BROWN LAW, P.C.
                    One Old Country Road, Suite 347
                    Carle Place, NY 11514
                    Tel:    (516) 873-9550
                    Fax:    (516) 747-5024
                    *Attorneys for Respondents*